Yes, Your Honors. To please the Court, this is Ray Bowen again for Asphalt Professionals. I very much appreciated you sending the case of High Sierra v. Mitchell. I noted that you asked for us to at least comment on whether it applies or not, and I found it very informative. Of course, it was not a published opinion, so we didn't put it in our brief, but there are some striking similarities between High Sierra and the case that we're arguing at present. Of course, Mitchell argued that he was not a signatory to the contract. In our case, of course, Darin Davis acknowledges he's not a signatory to the contract. He signed on behalf of T09 in a representative capacity, but he admits he was not signing as a signatory to the contract. We then have Mitchell arguing that he was entitled to attorney's fees because of an alter ego issue that had been pled in the pleadings. Well, in our case, we actually not only pled alter ego, but we were successful in obtaining an order against Mr. Davis and others for alter ego. Can you hold it one second? I don't know. Did we lose someone? I see. I don't see co-counsel. I don't see counsel for the appellee anymore. Do you? Do either of you? I don't see counsel. That is correct, Judge. They have fallen off of the call. Okay, so I'm going to stop you right now. I'm sorry. I guess I spoke too soon how well it was going. So well, we'll start again. So don't worry about it. Okay. Yes, I know it can be a little bit unnerving, but we'll, we'll get through it. I'm contacting Mr. Forsley now, Judge. Okay. Well, Judge Collins, I forgot to welcome you. Thank you for sitting with us on assignment. Oh, I feel very welcome either way. Thank you. Thank you. Thank you. How hot is it in Arizona right now? It's going to be about 105, 106 today. Okay. How about Pasadena? How is it? Oh, it's so mild and temperate. Beautiful outside. Hello. We are joined by counsel on phone, I believe. Phone number ending 7-3-5-0. Yes, I lost connection. This is Mr. Forsley. This is Mr. Forsley. Correct. I lost connection. So I'm here on the phone. Okay. I'm not rather than just make you. I'm just going to start the clock over again. And we'll start over just so I won't worry about that. You missed anything. Okay. If that's okay. Okay. That's fine with me, Your Honor. Okay. Go again, Mr. Bowen. Thank you very much. It's still you and you were commenting on Sierra, I think. Yes, that's true. I'll just start briefly in case Mr. Forsley did not hear my opening, but it was essentially thanking the court for sending the High Sierra case and indicating that I do see some striking similarities between High Sierra, the facts of that case and the facts of our case. And I was going through some of the facts that I think are common to both cases. And I begin by saying that Mitchell acknowledges that he was not a signatory to the contract, whereas in our case, Davis acknowledges he was not a signatory to the contract. Can I interrupt you just for a moment, counsel, and ask you a question about High Sierra versus Mitchell? And that's why we flagged it, because obviously, even though it's an unpublished decision, we can look to it for some persuasive value based on your research, both while briefing this case as well as after we notified you of the Mitchell case. Do you view this case as an outlier? There's a whole bunch of other cases in the California state court that talks about the arbitration provision. And so High Sierra does stand out as being a little different. I know that there was an attempt in High Sierra to distinguish the line of arbitration cases in terms of the alter ego liability. And that seems to me to be a little bit more consistent with the underlying equitable principle. So how do you address that? Well, I agree, actually, of course, with the decision that's in the unpublished opinion. I do think that the arbitration clause in California, we know that if there's any opportunity to get a case into arbitration, the courts highly favor that. And yet, in the case of an alter ego finding or an alter ego allegation, it's not similar. The alter ego allegation, which we were successful in proving, is for liability purposes. It's not to make an individual a party to a contract that that individual is not a signatory to. So here we have Mr. Davis, who is an alter ego. And that's the final ruling of the Court of Appeal. He is liable for the debts of T09. That's the TOIX Defendant. But it doesn't mean that he's equivalent to a signatory to the contract for any purpose. Well, yeah, certainly that's what Mitchell seems to stand for, that proposition. But given that all this is really based on underlying equitable principles, you are essentially saying that Mr. Davis is responsible as an alter ego for all of the liabilities, but he can't take advantage of any provision that would be favorable to him. Is that the upshot of your analysis? Well, the court in High Sierra, we understand that this might be inequitable. But California, as we know, follows the American rule. And as following the American rule, you're going to have some inequities. But that doesn't mean that just because there's an inequity, it probably isn't every case. But in this case, the inequity of saying to Mr. Davis that because you engaged in conduct which caused you to be found to be an alter ego, that's paramount to fraud. We have statements in the appellate opinions that indicate that to not find Mr. Davis and the other individuals to be alter egos would be to sanction a fraud. These individuals and entities were creating shell companies that had nothing in them. They were simply taking money, and then they admitted that we set them up this way for liability purposes so that when all is said and done, there's nothing left but a shell. And the court found that. And so the inequity would have been on the part of asphalt professionals to say that they sue somebody and find out that it's nothing but a hollow shell. And here we have Mr. Davis, who filed bankruptcy. We certainly are here. And we filed our 523 action against him, and we were not successful. And I think it's significant also to note that that 523 action, the appeal had become final before Judge Kaufman made her ruling in April of 2019. The 523 action became final in January of 2019. Well, okay, but we have to ascertain what we think the California law is. And so we have some conflict here. We have the option to certify to the California Supreme Court. I'm a former California judge. I just don't think this would be very sexy for the California Court of Appeal. I mean, for the California Supreme Court to take this. And I'm somewhat reluctant to prolong this any longer than... We're already 15 years into this, aren't we? Well, we're 15 years into litigation, but not 15 years into this case. The lawsuit was filed in 2005. That is true. It's ongoing, and there have been lots of appeals taken by both sides. And we are here today because of the bankruptcy filings by Mr. Davis. Well, I guess I'm trying to understand. You know, I always sort of like to understand the real world part of things and stop me where I'm wrong. But it starts out basically with some $200,000 worth of work to be done. And now we're 15 years later. And by this stipulation, the attorney's fees have been what? How much money have you recovered on attorney's fees up to this point? Well, we've recovered in excess of $2 million. All right. There's just certain things that I'm just wondering if there's something going on that I'm not missing, that I'm missing because generally when people are in business and it's initially a $200,000 debt and you've gotten the $200,000 back too, right? Yes. Plus all the attorney's fees. And it's still going. I'm sorry, not all of the attorney's fees. No, the attorney's fees were carved down. Well, we're working on part of it. But if they've so far outseeded what the initial issue was, how long is this going to go on? Well, we're hoping that it ends with this court. Well, how would it end? If we reversed, how would it end then? Would you then go back and say, well, now we're going to do phase two, phase three rather in the superior court so it wouldn't be over, right? Well, phase three has nothing to do at this point with Mr. Davis. It has to do with other individuals. And the court of appeal in the underlying appeal said that it's unfair for asphalt professionals just because of the money involved here to walk away from a valid claim. And they also said that the reason the attorney's fees are what they are is because of the gamesmanship played by the various defendants. We had 15 defendants at one point. And they were playing games for years, forcing us to file discovery motion after discovery motion, appeal after appeal. And the court said the reason the attorney's fees are so high is because of the defendants' improper conduct. Let me ask you this. If now that the bankruptcy court determined that you were attempting to keep Davis from discharging the debt based on fraud, and the bankruptcy court waited for the state courts, and finally phase three didn't happen, and so the bankruptcy court went ahead and said, I'm deciding this, and I don't think it was fraudulent, and so I'm going to allow the debt to be discharged. How does that ruling affect the money that you've already collected? Does it have any effect on it? Not at all because we didn't collect any money against Mr. Davis. That's one of the issues on appeal is, in our claim, that's the other appeal, in our claim, did we try to get paid twice? And the answer is absolutely not. From 05 until 2010, we didn't ask for those fees at all. And the only evidence submitted by Mr. Davis is a declaration by Attorney Tavara, who was the fourth attorney in line and didn't come into the case until 2009. And Tavara, in his declaration, which Judge Kaufman relied on, said, I've been attorney of record since day one. I want to ask you another hypothetical question. I mean, we haven't conferenced on this case, so I have no idea what, you know, we read everything, we come in here, we have an oral argument, and then we talk about it with the judges. So, hypothetically, all right, you have two appeals here. Correct. If hypothetically, you were to lose, and this court affirmed, how, in your mind, does that affect Phase 3? It doesn't impact Phase 3 because these appeals pertain to Mr. Davis, and they would not be used as collateral to stop over race judicata in Phase 3. Well, could they claim race judicata? Because the bankruptcy court, it was Mr. Davis and it was you, and the bankruptcy court found no fraud. No, because... Can they claim that? They can claim it, but not successfully, I believe, because the standard for bankruptcy is very different than the fraud standard in the state court. And Judge Kaufman noted that. She said, in her courtroom, it's a much higher standard in order to find fraud in the bankruptcy setting. You have to show, in her courtroom, intent. The defendant essentially has to come into the courtroom and say, I did it. And no one's ever... Okay, let's say if the attorney's fees part of it, that's part of what you're contesting because Davis was ordered attorney's fees as part of that. I'm saying hypothetically. I'm not saying this is going to happen, but hypothetically, if that were to happen, would then, in Phase 3, could they claim that you're frivolously pursuing that since it's already... They've already gotten attorney's fees on that? Well, they could claim it, but Phase 3 has never been decided. It's never been tried. No, as far as you're concerned, regardless of what we do, you're going forward with Phase 3? Well, we've never had a jury trial. We asked for a jury trial from day one, and Judge Rieser said, I'm going to carve out the jury, and I'm going to decide... Well, okay, just answer the question. As far as you're concerned, even if you lose here, and I'm talking that hypothetically, you're still going forward with Phase 3. That's correct. Okay. Then I do have another question going back more to, you make a merger argument here for the first time on appeal. Why should we entertain that if this has been going on all that time, and now, why haven't you waived it? Well, we haven't waived it because merger is automatic. It happens whether or not anyone brings... No, I mean, I'm talking about the appellate principle. If you bring something up for the first time on appeal, why haven't you? No, we have not. Why not? Why didn't you just decide to do it now? Well, we didn't just decide to do it now. We've argued it for some time. It wasn't argued in the beginning because we expected we were going to win. We thought we were going to prevail. At some point, we said, well, wait a minute. The contract provisions, especially the attorney's fees provisions, have merged in the judgments we obtained in the state court. The attorney's fees merged into the judgment we obtained as the prevailing party. After those rights merged, it was done not by some motion. It was done automatically because it's a jurisdictional issue that automatically merges when... I mean, if we litigated for another 10 years and somebody 10 years from now said, well, wait a minute. All of those issues merged in the initial judgment. I submit that they'd be right. Dr. Merger says whatever happens after the initial judgment on that contract, there is no more contract. The contract disappeared. The contract did not exist with regard to the attorney's fees provision. I have another question that I want to ask you about judicial estoppel. You assert in your reply brief that Davis's judicial estoppel argument, which recognizes that in a state court, you asserted that Davis is T.O., is not supported by the law or the facts. I didn't see any citations to anything there. Tell me why the judicial estoppel argument... I didn't see any citations to any law for me there. Well, I didn't see any citations from Mr. Forsley, number one. And number two, judicial estoppel does not preclude us from arguing and pleading in the alternative. At some point, if we got a judgment based upon those arguments, then we would be estopped. But up until the point we get a judgment on those issues, there is no estoppel because we were simply pleading in the alternative. They were alternative requests for relief. We didn't know where we were in the beginning of this case. We ended up having four amended complaints because as we proceeded and uncovered more and more information, we realized where the cause of actions were heading, what facts supported them. And so there was no estoppel because of simply arguing and pleading. Okay, let me ask you this. How much time have you wanted to reserve for rebuttal? Well, I was hoping for five minutes, but I see... Well, you don't have that long. But since I've asked you a lot of questions, why don't you save what you have and I'll add two minutes to it. So I'll give you three minutes for rebuttal. But if either of my colleagues want to ask questions right now, please feel free. I do have a short question. Neither party had talked about the implication of the June 2013 stipulation, which as I read it, does have a provision for an award of reasonable attorney's fees to the prevailing party. Should further action be required to compel the performance? Why doesn't that entitle Mr. Davis to attorney's fees in this case, given that as part of the 523 action, you were seeking fees from the phase one and phase two of the state court litigation? Thank you very much. We have actually briefed that. We have discussed it. And in that case, the settlement stipulation did not include Mr. Davis. We carved out, I carved out, all of the attorney's fees that provided for any recovery against Mr. Davis. One can imagine that if we had left him in, and if we actually got paid attorney's fees for work that Mr. Davis said was applicable to him, he would now have a claim in bankruptcy, as would his trustee, for preferential treatment.  We couldn't go after Mr. Davis at that point. He was in bankruptcy. I drafted the stipulation. It was drafted in a hurry. It's not the world's best stipulation, but I am the only attorney who's been in this case from day one. Mr. Tavera has not. And that goes back to his declaration where he says, I have been involved in this case since day one. We submitted evidence showing that's just not true. He wasn't involved until 2009. And that stipulation, I carved out myself. And there's been no evidence to the contrary. I carved out every hour that applied to Mr. Davis because I knew he was in bankruptcy at the time. We were in litigation in the bankruptcy court. And that stipulation, if we had left him in and got paid money for Mr. Davis, we would have had to disgorge it or a trustee would have sued us on a preferential treatment. I've got your answer. Thank you. I don't want to take any more of your time. Thank you. Okay. So we've taken you over, but I'm going to give you three minutes for rebuttal so it sort of works out about the same that way. Okay. Thank you. All right. Mr. Forestly. Yes. Thank you, Your Honor. Your Honors. I hope you can hear me all well. I'm on the phone. I can't see anybody, but I'd like to start with a high CR properties case and show how that is distinguishable from the alter ego law as I see it. You've already heard from Mr. Bowen that Mitchell was not found to be alter ego and that he only argued he was entitled to fees because he was alleged to be an alter ego and agent. Here, Mr. Davis was found to be the alter ego and responsible for all amounts due under subcontract. Second, Mitchell was only alleged to be an alter ego, so the high CR courts analysis did not concern whether a party found to be the alter ego can enforce an agreement. I know the court discussed the riddle in the Zuckerman cases, but that was in the context of a party that was alleged to have been an alter ego. Thus, I think anything regarding how it would affect a party that is an alter ego is dicta, so it really can't be applied here because we know Davis has been found to be an alter ego. Third, I disagree with the high CR court's assertion that Roe and the Dreyer courts allowed a non-signatory alter ego to be a party to an arbitration agreement because of the public policy favoring arbitration. Roe and Dreyer are not about public policy of enforcing arbitration agreements. They are cases about equity. Alter ego is also about equity. In Dreyer, the California Supreme Court found that non-signatories were alleged to have been acting as agents for the Rams, so, quote, they are entitled to the benefit of acting as agents for the Rams, and they're entitled to the arbitration provisions. Roe essentially followed the Dreyer decision. This means that it would be unfair to allow a plaintiff to attempt to enforce a contract upon a non-signatory alter ego and not allow that alter ego to use the terms of contract, of the contract for its defense. One other point... Let me add to this, counsel. I'm sorry. This is Judge Wynn here. I know you can't see me, so it's hard to hear a disembodied voice and figure out who's asking you the questions, but, you know, we recognize that in Mitchell there's that factual distinction in that there was never a finding that the defendant in that case was, in fact, an alter ego, but the case clearly stated that 1021 really doesn't apply to people who are not signatories, even where it's a tort suit and there's an alter ego theory of liability. So that, I take it, you're head-on disagreeing with that proposition, but are there other cases in California that you can cite to us outside of the arbitration context that would be in your favor? Yes. We can start with the California... with the U.S. Supreme Court, which stated in the Arthur Anderson v. Carlisle case... I can give you the site if you want it, but here, let me tell you what they quoted. Traditional principles of state law allow a contract to be enforced by or against non-parties to the contract through assumption, piercing the corporate veil, alter ego, etc. So I know this case, it concerned the enforceability of an arbitration provision, but there was no limitation on the general principle that a non-signatory alter ego can enforce a contract. So that's the U.S. Supreme Court. We also have a California courtable appeal case that found a non-signatory alter ego corporation to be a party to a contract. The case is McLaughlin L. Bloomson's Company, 206 Calap 2nd, 848. It's a 1962 case. But in that case, the state court said the alter ego corporation was bound, this is quote, bound by the agreement in the same manner as though it were expressly included a signatory thereto, end quote. So the appellate court affirmed the judgment from the state court that required the non-signatory alter ego corporation to be considered a party to the agreement to the same extent as a dominant corporation. So what we can gather from that is that a non-signatory alter ego can be and is a party to the agreement and the alter ego can then enforce it. So in that case, you couldn't just have them be a part of the agreement and not be able to enforce their side of the agreement as well. So they're just a part of the agreement. We also, like the McLaughlin court, there's also a California federal district court case which this case relied on federal alter ego law and also held an alter ego to be bound to an agreement. And that case is Operating Engineers Pension Trust versus Mulder Brothers. That's M-O-U-L-D-E-R Brothers, Inc. 7175-SUP-697. And that's a 1989 Central District of California case. And there, the district court found a non-signatory corporation to be the alter ego and that the alter ego is thus obligated to the agreement. And we also have another, there's a decision before this Ninth Circuit Court of Appeals, the Sheet Metal Workers International versus Arizona Mechanical case, 863-FED-2-647. And there, this court stated a non-signatory employer may be held to the terms of an agreement signed by another employer under the alter ego or single employer doctrines. Thus, the California and federal courts are in agreement, essentially, that a non-signatory alter ego is a party to agreement. And I would also like to point to the court one other thing. There's a California Code of Civil Procedure, 187, which is used, essentially, to amend a judgment to add an alter ego. So you've got a judgment and now you want to add an alter ego. But if you look at this statute carefully, it also confirms that an alter ego is deemed to be a party to a contract. And why? Well, because to proceed under 187, the alter ego must have had control of the defense of the breach of the contract cause of action. So if you're in control of the defense, you have to be entitled to all of the terms of that contract to be able to use the defenses of that contract in your defense. So, to me, this means an alter ego is a part of the contract because then it can use the terms for its defense. And if it were not a party, it couldn't use any of those terms. Thus, in my view, 187, CCP 187, also implies an alter ego can enforce the contract's terms. I have a couple of questions. This is Judge Callahan, that go back to questions that I ask counsel for API. What is your response to API's argument that we can reach the merger issue because that issue is one of purely law? Yes. Well, my view, again, is it's not something... I didn't see any site anywhere that it's an issue that could be brought up on appeal if it was not raised below. And even if the court could look at it, really, API is doing two different things. They're arguing it's a merger. But, for example, in the other appeal here regarding the proof of claim, it's still asserting that it's under the agreement. It's owed monies for invoices. It's owed monies for attorney's fees. So, on one hand, it's saying, oh, yeah, there's a judgment, there's a merger, you can't go in there. On the other hand, it's still arguing there is no judgment and I'm still entitled to more fees and invoices under the contract. So, on that basis, the court is essentially judicially stopped from arguing that it's entitled to more money. What's your best case for the proposition that API was judicially stopped from arguing that Davis was not a party to the agreement? I'm sorry. I didn't hear that, Your Honor. Best case for the proposition that API was judicially stopped from arguing that Davis was not a party to the agreement. What's your best case? My best case is that at the state court level and at the bankruptcy court level, all the allegations in the complaint saying that Davis is a part of the contract, Davis is a part of the contract, the state court find that Davis is an alter ego, in my view, as part of the contract, and then the bankruptcy court relying on that judgment in the state court for request of judicial notice find that Davis is a part of the contract under the alter ego theory and that it's relied on that all the way along and that it should not be able to argue that Davis is not a part of the contract and also it recovered all those fees. Well, okay. Hypothetically, I'm going to take you to the same hypotheticals that I took Mr. Bowen and this is hypothetical because we haven't decided the case. If you were to prevail on appeal, on both of the appeals, what does that do to the state court phase three action? You're right. Mr. Davis is no longer a party to the state court action because he got his discharge. In my view, so I'm not representing him, but my view that the defendants in state court action could use this case as issue preclusion or collateral estoppel as to the fraud and the API could no longer go forward with its case and it would be the end of the case. Thank you for your questions. So I want to give a chance to my colleagues. I do have another question for you. This is Judge Nguyen again, counsel. With regard to the merger argument, we do have the discretion to hear an issue that's purely one of law. So in other words, instead of deeming it forfeited, we do have discretion if it is a pure question of law and there's no prejudice. I think it is a legal issue that the contract merged into the judgment, but what prejudice did you suffer? So for example, with regard to your judicial estoppel argument, had this merger argument been raised below? Would there have been a need to develop a factual record or is there some other prejudice that you can articulate? Well, I would have brought up to the bankruptcy court below that a judgment does not bar a different cause of action under the same contract. So that's one thing I would have argued, and there's a case I can cite there that's G-I-E-T-Z-E-N. I guess it gets in. I'm sorry. Let me clarify my question. Other than legal arguments that you could have raised to counter the claim that the contract merged into the judgment, is there factual development that would have been necessary in order for you to advance your judicial estoppel? A theory? Yes, I would have argued to the bankruptcy court below that Asphalt Professionals is still seeking today its invoices and its unpaid fees. How can you have a judgment that's merged if the plaintiff is still seeking its invoices and its fees under the contract? And you'll see that's part of the proof of claim. You're still alleging it. So that's what I would have argued to the bankruptcy court below, and I feel confident the court would have found that there was no merger because on that basis and additionally to the law that I just previously cited. Go ahead. I don't have any further questions. You still have two minutes if you want to use them. Okay. I'm just looking to see where I was at, and thank you. So the other thing that I wanted to mention in the court, if we look at phrases in the alter ego cases, the courts could have said, okay, you're the alter ego, and that means you're liable for this amount of money. But none of the cases say that. There's always an implication there's something more, something more. For example, a non-signatory alter ego defendant stands in the shoes of a party to their contract. An alter ego is one who effectively is the corporation. In allowing alter ego courts, you ignore the corporate entity. Courts ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation. So if you don't have the corporation anymore, you've ignored that, what do you have left? Well, here in this case, you have Davis. You've got to have a contract with somebody, and you don't have a contract with the corporation because you've ignored it. How about this one? We disregard the corporate entity and treat the corporation's acts as if they were done by persons controlling the corporation. Again, when you disregard the corporation, the only thing you're left with is the alter ego, which in this case is Darren Davis. So he has a right to enforce the subcontractor agreement here. But you look at the cases and they go over and over again. You'll see all these phrases that give something more to an alter ego than just that you're liable for a contract, and that's what we're trying to do here, just saying that Davis is just liable to contract, but there's so much more to it, he's entitled to enforce that contract. I have nothing more unless your honors would like to ask me some questions. There do not appear to be any additional questions. I'm looking at faces. So then, Mr. Bowen, you have your three minutes for rebuttal. Thank you very much. Just again, I don't want to take the time to go back over the merger cases that we cited, but on page seven of the appellant's opening brief, we cited a number of cases that all stand for the proposition that regardless of the timing, the merger doctrine applies instantaneously. It applies, and it's something the court can review, de novo. It's an issue of law. It's not something that is, oops, you forgot it, gotcha sort of argument. You don't get to argue that now. It can come up at any point in time if there has been a judgment and there have been attorney's fees awards that have resulted in attorney's fees based upon the original judgment. Otherwise, the case never ends. It does go on and on and on and on unless there is some finality. We were the prevailing party in that case. For Mr. Forsley to suggest that we're trying to double dip here is just not true. We filed our claim against Mr. Davis because that's all we could do. We couldn't go after him in the state court. There was an automatic stay stopping us from doing that. Why in the world should we just have to stop and not even file a claim in his case? This is a man who hid a million dollars worth of assets that we caused the trustee to go after and has liquidated for the benefit of creditors. There is money in this estate. Why should we be precluded from participating in that money just because Mr. Davis filed bankruptcy during our state court litigation? The state court litigation will go on. It will go on not as to Mr. Davis but as to the other defendants who don't get the benefit of Mr. Davis's bankruptcy filing. They don't get it and they also don't get the higher standard in bankruptcy of forcing us to meet standards against Mr. Davis that simply are not available in the state court. We have the right to get the lower standard of fraud in the state court which essentially the court of appeal has said we've already proven that if they didn't agree with us they would be sanctioning a fraud. So for Mr. Porsley to say that our claim should be disallowed that's just not true. Our claim was from 05 to 2010. No one else knows about that claim except me and no one has produced any evidence to show that any of those monies were paid at any other time and as I said previously I hate to use my time but I have to make this point. The stipulation that I prepared I carved out all the monies owed to Mr. Davis. We are not saying merger on one hand and on the other hand we still get to sue on the contract because it's not final. When we filed the claim we didn't have all of the the history that we have in the state court. The state court stopped us to Mr. Davis. So here we are entitled I believe to receive the award that we would be participating in with the other creditors because there's been no legitimate defense to our claim for attorney's fees. The other issue with regard to your time's expired. I've been more than generous with your time so you've now gone into overtime. So unless any of my colleagues have questions no further questions. All right. This matter will then stand submitted and thank you for your argument and your patience in getting the video up and running. So I can Mr. August did you want us to stay on the line or are you or Yes judge if the judges would stay on the call please. Okay. Thank you. Thank you. This court for this session stands adjourned.
judges: Callahan, Nguyen, R. Collins